1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF RHODE ISLAND

3

4
      * * * * * * * * * * * * * * *    C.R. NO. 20-57-JJM
5                                  *
   UNITED STATES OF AMERICA        *
6                                  *
        VS.                        *    JUNE 15, 2022
7                                  *    11:15 A.M.
   AKINOLA AKINLAPA                *
8                                  *
      * * * * * * * * * * * * * * *    PROVIDENCE, RI
9

10          BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

11                         CHIEF JUDGE

12                    VIA VIDEOCONFERENCE

13

                  (Arraignment and Change of Plea)
14

15   APPEARANCES:

16   FOR THE GOVERNMENT:    MILIND M. SHAH, AUSA
                            U.S. Attorney's Office
17                          50 Kennedy Plaza
                            Providence, RI  02903
18
     FOR THE DEFENDANT:     JOSEPH J. VOCCOLA, ESQ.
19                          Voccola Law Associates
                            454 Broadway
20                          Providence, RI  02909

21   Court Reporter:        Karen M. Wischnowsky, RPR-RMR-CRR
                            One Exchange Terrace
22                          Providence, RI  02903

23

24

25

1    15 JUNE 2022 -- 11:15 A.M.

2    VIA VIDEOCONFERENCE

3         THE COURT:  Good morning, everyone.  We're here

4    for an arraignment and a change of plea in the case of

5    the United States of America versus Akinola Akinlapa,

6    Criminal Action 20-57.

7         Would counsel identify themselves for the

8    record.

9         MR. SHAH:  Good morning.  Milind Shah for the

10   United States.

11        THE COURT:  Good morning, Mr. Shah.

12        MR. VOCCOLA:  Good morning, your Honor.  Joseph

13   Voccola representing Mr. Akinlapa.

14        THE COURT:  Good afternoon, Mr. Voccola.

15        Good afternoon, Mr. Akinlapa.

16        THE DEFENDANT:  Good afternoon.

17        MR. VOCCOLA:  Louder.

18        THE DEFENDANT:  Good afternoon.

19        THE COURT:  Mr. Akinlapa, Mr. Jackson is going

20   to swear you in now.

21        (Defendant sworn)

22        THE CLERK:  Please state your name and spell

23   your last name for the record.

24        THE DEFENDANT:  Akinola Akinlapa,

25   A-K-I-N-L-A-P-A.

1       THE COURT:  Mr. Akinlapa, you are now under

2   oath, and that requires you to give me truthful answers

3   to the questions I ask.  If you fail to give me

4   truthful answers, then the Government could bring

5   further charges against you, like perjury or giving a

6   false statement or whatnot.  Do you understand that?

7       THE DEFENDANT:  Yes.

8       THE COURT:  If I ask you a question that you do

9   not understand, just ask me to explain it further or

10   repeat it, and I'll be glad to do that.

11       And if at any time you want to discuss a matter

12   privately with your attorney, you let me know, and we

13   can put you in a confidential breakout room or you can

14   just mute yourself, either way, in order to talk to

15   your lawyer; but you just have to let me know you want

16   to talk to your lawyer.  Okay?

17       THE DEFENDANT:  Okay.

18       THE COURT:  Now, Mr. Akinlapa, we're conducting

19   this hearing via the Zoom platform remotely because the

20   Court has determined at times now because of the

21   pandemic it's not always safe for us to gather in

22   person.

23       I understand after discussions with your

24   attorney you agree to proceed via the Zoom platform and

25   you waive any right to appear in person for this

1  arraignment and change of plea; is that correct?

2      THE DEFENDANT:  Yes.

3      THE COURT:  Okay.  Mr. Akinlapa, before I advise

4  you of the charges that the Government has brought

5  against you, I want to tell you about certain important

6  rights that you have.

7      First, you have the right to remain silent.

8  That means you do not have to say anything at all about

9  this matter to anyone at any time, and you can assert

10  that right any time that you want to.  Even in the

11  middle of a sentence, you can just say, "I want to

12  remain silent," and we all must respect that.

13      The important thing, however, for you to know is

14  that if you do say anything, anything that you say can

15  be used against you.  Do you understand your right to

16  remain silent?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Okay.  Second, you have a right to

19  counsel at every step of these proceedings.  You have a

20  right to hire your own counsel as you have in this

21  case, Mr. Voccola; but as you know, if you can't afford

22  counsel, the Court will appoint counsel for you; and

23  you have a right to counsel throughout all of the

24  proceedings.  Do you understand that, Mr. Akinlapa?

25      THE DEFENDANT:  Yes.

1          THE COURT:  And you wish to proceed with your

2     retained counsel, Mr. Voccola?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  Now, you have a right to have

5     your lawyer present with you whenever the Government

6     attempts to speak to you.  In order to invoke your

7     constitutional right, all you have to do is say, "I

8     want my lawyer," and the Government has to stop

9     interrogating you at that point.  Do you understand

10    that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  I want to now tell you,

13    Mr. Akinlapa, about the nature of the charges that the

14    Government has brought against you.  They brought a

15    two-count Information against you charging you with,

16    one, enticement of a minor to engage in illicit sexual

17    activity and, second, possession of child pornography.

18         Mr. Voccola, have you and your client received a

19    copy of the Information?

20         MR. VOCCOLA:  Yes, your Honor.

21         THE COURT:  And have you reviewed the charges

22    with Mr. Akinlapa?

23         MR. VOCCOLA:  Yes, your Honor.

24         THE COURT:  And do you believe he understands

25    the nature of those charges?

1    MR. VOCCOLA:  I do believe that, your Honor.  He

2    does understand.

3    THE COURT:  Okay.  Now, Mr. Akinlapa, the two

4    counts, I'm not going to -- well, maybe we just will.

5    Count I charges enticement of a minor to engage in

6    illicit activity.

7        That alleges that on or about February 27th in

8    2020, in Rhode Island and elsewhere, you, using a

9    facility or means of interstate or foreign commerce,

10   knowingly persuaded, induced, enticed or coerced a

11   particular individual who was under the age of 18 to

12   engage in sexual activity which any person -- for which

13   any person can be charged with a criminal offense,

14   including production of child pornography.  That's

15   Count I.

16       Count II alleges that you possessed child

17   pornography on or about February 27th, 2020, in Rhode

18   Island.

19       Mr. Akinlapa, do you understand the charges that

20   the Government has brought against you?

21   THE DEFENDANT:  Yes.

22   THE COURT:  Was that yes?

23   THE DEFENDANT:  Yes.

24   THE COURT:  Okay.  I understand from your plea

25   agreement that you agreed to waive any right to have

1    your case presented to a grand jury and to be charged

2    by way of Indictment.  I want to review that decision

3    with you.

4          Has your lawyer told you about your right to an

5    Indictment by a grand jury?  Mr. Akinlapa?  Do you want

6    to discuss the matter with your attorney?

7          MR. VOCCOLA:  Your Honor, one moment, please.  I

8    apologize.

9          THE COURT:  No worries.

10    (Defendant confers with counsel)

11          THE COURT:  Mr. Voccola, you're not muted.

12          THE CLERK:  I got it, Joe.

13    (Defendant confers with counsel)

14          THE COURT:  Mr. Akinlapa, you've had a chance to

15    speak with your attorney.  The question that I was

16    asking you is, has your lawyer explained your right to

17    an Indictment by a grand jury?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  And did he answer your questions

20    about that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Okay.  I want to just briefly review

23    on the record what that is.  You have a right to have

24    your case presented to a grand jury in the first

25    instance and to be charged by way of an Indictment.

1        A grand jury is made up of at least 12 people,

2    and they sit and they listen to the evidence that the

3    Government would put on in order to prove that there's

4    probable cause to charge you with a crime.

5        Now, if the Government were to present all of

6    the evidence to the grand jury and if the grand jury

7    were to find that there was no probable cause to charge

8    you, then you could not be charged with that crime.

9        So by waiving your right to a grand jury

10   presentation, you give up the chance that the jury

11   might come back and say no probable cause.  Do you

12   understand that?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  And based on that explanation, do

15   you continue to want to waive your right to a grand

16   jury Indictment?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Has anyone in any way threatened you

19   in any way to get you to waive your right to a grand

20   jury Indictment?

21       THE DEFENDANT:  No.

22       THE COURT:  Has anyone made any promises or

23   assurances to you other than what's contained in the

24   plea agreement in order to get you to waive your right

25   to an Indictment by a grand jury?

1        THE DEFENDANT:  No.

2        THE COURT:  This Court finds that your waiver of

3   a right to an Indictment by a grand jury is made

4   voluntarily and knowingly.

5        Mr. Jackson, is there a signed grand jury waiver

6   on the docket?

7        THE CLERK:  There is not a signed one, Judge;

8   but I've prepared one, and I can put it on the screen

9   for Mr. Akinlapa to agree to an electronic signature.

10       THE COURT:  Okay.  Mr. Akinlapa, we're going to

11  show you a document.  I want you to read it.  I want

12  your lawyer to read it.  And at the end of it, I'm

13  going to ask you, if you agree with it, whether the

14  Court can sign your name to it so the document can be

15  filed on the record.  Okay?

16       So just watch the screen for a minute, and it

17  will come up, and Mr. Voccola can explain it to you

18  while you read it.

19       (Pause)

20       MR. VOCCOLA:  We've read it, your Honor.

21       THE COURT:  Mr. Akinlapa, after reading the

22  Waiver of Indictment and consulting with your attorney,

23  do you agree that the clerk's office can electronically

24  sign your name to that document showing that you're in

25  agreement with that?

1     THE DEFENDANT:  Yes, your Honor.

2     THE COURT:  Okay.  And, Mr. Voccola, same

3  question to you, can the clerk's office sign your name

4  electronically?

5     MR. VOCCOLA:  Yes, your Honor.

6     THE COURT:  The Waiver of Indictment will be

7  filed on the record and is, as I said before, accepted.

8     Mr. Akinlapa, I'm going to now turn to the

9  change of plea section of this hearing, and I want to

10  begin by noting that there's a plea agreement in this

11  case that you signed and the Government signed and your

12  lawyer signed.  Do you remember signing that plea

13  agreement?

14     THE DEFENDANT:  Yes.

15     THE COURT:  And did you sign that plea agreement

16  after you thoroughly reviewed it with your attorney?

17     THE DEFENDANT:  Yes.

18     THE COURT:  And did you sign that plea agreement

19  voluntarily?

20     THE DEFENDANT:  Yes.

21     THE COURT:  Okay.  Mr. Akinlapa, how old are

22  you, sir?

23     THE DEFENDANT:  Twenty.

24     THE COURT:  Twenty?  And how far did you go in

25  school?

1      THE DEFENDANT:  High school.

2      THE COURT:  Did you graduate high school?

3      THE DEFENDANT:  Yes.

4      THE COURT:  Good.  And have you been treated

5  recently for any mental illness or addiction to

6  narcotic drugs?

7      THE DEFENDANT:  No.

8      THE COURT:  As you sit here today, are you under

9  the influence of any medication, drugs or alcoholic

10  beverages of any kind?

11     THE DEFENDANT:  No.

12     THE COURT:  Okay.  Mr. Akinlapa, are you fully

13  satisfied with the representation that you've received

14  from your attorneys in this case?

15     THE DEFENDANT:  Yes.

16     THE COURT:  Now, before I ask you about your

17  change of plea, Mr. Akinlapa, I want to explain to you

18  certain rights that you have under the Constitution and

19  laws of the United States; and I want to make sure you

20  understand that if you change your plea to guilty

21  today, you're going to give up these rights.

22         So one right you always have, and that's the

23  right to plead not guilty, which you have done so far

24  in this case.  If you were to continue to plead not

25  guilty, you'd be entitled to a trial by a jury.

1    At that trial you'd be presumed to be innocent

2    and the Government would have to prove each and every

3    element of the charges it brings against you beyond a

4    reasonable doubt.

5    You would have a right to see and hear,

6    confront, and your lawyer could cross-examine all of

7    the witnesses that the Government would put on and

8    evidence it would put on in order to prove its case

9    against you.

10    You would also be allowed to put on a defense.

11    In fact, you could subpoena people.  Your lawyer could

12    require people to come to court to testify in your

13    defense.

14    You would also be allowed to testify yourself;

15    but, more importantly, you would not have to testify.

16    No one could make you testify.  And if you chose not to

17    testify, that could not be used against you in any way

18    by the Court or by the jury.

19    But, Mr. Akinlapa, if you change your plea to

20    guilty today to these two counts, you will give up your

21    right to a trial, there will be no trial, and you'll

22    give up these other rights that you have that I just

23    told you about.

24    Do you understand that you have these rights and

25    that you're going to -- if you change your plea to

1    guilty, you'll give up these rights?  Do you understand
2    that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  You understand there will be
5    no trial in your case if you plead guilty?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Okay.  Has anyone attempted in any
8    way to force you to plead guilty or threatened you in
9    any way to get you to plead guilty?

10           THE DEFENDANT:  No.

11           THE COURT:  Are you sure about that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Okay.  I just didn't hear you
14   clearly then.  Has anyone made any promises or
15   assurances to you other than what's contained in the
16   plea agreement in order to get you to plead guilty?

17           THE DEFENDANT:  No.

18           THE COURT:  Okay.  So are you today knowingly
19   and voluntarily changing your plea to guilty because
20   you've made the decision now that it's in your best
21   interest to do so?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Now, Mr. Akinlapa, I want to tell
24   you about the maximum penalties that the Court could
25   impose at the time of sentencing in this case as well

1    as the minimum penalties as to one count.  So as to

2    Count I, there's a maximum term of imprisonment of

3    life, meaning I could sentence you to a lifetime of

4    imprisonment, and there's a minimum of 10 years.  That

5    means I will have no choice but to impose 10 years if

6    you plead guilty to Count I.

7          There's also a maximum fine of $250,000, up to a

8    lifetime of supervised release, and there will be a

9    $100 and $5,000 additional mandatory special

10   assessment.

11         As to Count II, the maximum penalty is 20 years,

12   the maximum fine is $250,000, there's up to a lifetime

13   of supervised release, and there is another $100 and

14   $5,000 special assessment.

15         Now, if the Court were to impose the maximum

16   sentence in both cases, then the maximum term of

17   imprisonment is life, the maximum term of -- amount of

18   fine is $500,000, there will be a lifetime of

19   supervised release, and there's a $10,200 fine as to

20   the two counts.

21         Do you understand that these are the maximum

22   penalties that the Court could impose at the time of

23   sentencing?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And do you also understand that if

1    you plead guilty to Count I, that the Court will be

2    required to sentence you to at least 10 years of

3    imprisonment?  Do you understand that as well?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  Mr. Akinlapa, are you a

6    citizen of the United States?

7              THE DEFENDANT:  Yes.

8              THE COURT:  As a U.S. citizen, you have certain

9    valuable civil rights that you could lose if you plead

10   guilty to these charges because they're felonies.  You

11   could lose the right to vote, the right to hold public

12   office, the right to serve on a jury and the right to

13   possess any kind of firearm or ammunition.

14             Do you understand that you could lose these

15   valuable civil rights if you plead guilty to these

16   charges?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Now, there are forfeiture

19   allegations.  Did you discuss the forfeiture

20   allegations in the plea agreement and in the

21   Information with your attorney?

22             THE DEFENDANT:  I don't remember.

23             MR. VOCCOLA:  Your Honor, can I have one moment,

24   please.

25             THE COURT:  Of course you can.

1        (Defendant confers with counsel)

2        MR. VOCCOLA:  Your Honor, we're ready.

3        THE COURT:  Great.  Mr. Akinlapa, has your

4  attorney discussed the forfeiture allegations contained

5  in the plea agreement and the Information with you?

6        THE DEFENDANT:  Yes.

7        THE COURT:  And do you understand that by

8  changing your plea to guilty you're giving up your

9  right to contest those forfeiture allegations?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Now, Mr. Akinlapa, I want to make

12  sure you understand how the Court will go about

13  determining what the appropriate sentence is in your

14  case.

15        At some point after this hearing, probation will

16  meet with you.  You have a right to have your lawyer

17  present with you, and I encourage you to make sure your

18  lawyer is present with you for that interview.  It's an

19  important interview.

20        They'll interview you and then conduct more

21  investigation in order to prepare a presentence report.

22  That's a report that's going to give me a lot of

23  information about you and your background and any

24  criminal history and the conduct and whatnot, but it

25  will also calculate the advisory guideline range.

1   Those are guidelines that help the Court determine what

2   an appropriate sentence is in your case.

3       Now, your lawyer might have told you what he

4   thinks the guideline range will be, but I haven't

5   determined that.  I won't determine that until the time

6   of sentencing.

7       Do you understand as we sit here today we don't

8   know what the guideline range will be in your case and

9   that I won't determine it until the time of sentencing?

10      THE DEFENDANT:  Yes.

11      THE COURT:  Okay.  Do you also understand that

12  you agreed to waive any right to appeal the sentence I

13  impose if I impose a sentence that's within or below

14  the guideline range?  Do you understand that as well?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Mr. Shah.

17      MR. SHAH:  Your Honor, this may not have any

18  impact on how the Court proceeds, but the proposed plea

19  agreement is a C plea.

20      THE COURT:  I did not pick up on that, Mr. Shah.

21  Thank you.

22      MR. SHAH:  I'm sorry I didn't advise the Court

23  earlier.  My fault.

24      THE COURT:  No, no, no, no, no.  It's just my

25  error in not having picked it up.  There we go.

1    Thanks.  Hold on one second, then.

2         Mr. Shah, just so I don't take up everyone's

3    time, explain to me what the relevant sentencing

4    agreement is that the parties have come to that the

5    Court will bind itself to if it accepts the plea

6    agreement.

7         MR. SHAH:  One moment, your Honor.

8         THE COURT:  Sure.  It could be that there isn't

9    any other than --

10        MR. SHAH:  You know, it doesn't look like there

11   is one.

12        THE COURT:  All right.  That's fine.  I

13   understand that.  There is a waiver, right, and is it

14   the guideline waiver, Mr. Shah?

15        MR. SHAH:  Yes, your Honor.

16        THE COURT:  Okay.  So I've stated that

17   correctly.

18        So, Mr. Akinlapa, because this is a binding plea

19   agreement on me, on the Court, if I were to accept it

20   and on all the parties, I won't determine whether to

21   accept the plea agreement until after the presentence

22   report is issued, and then I'll make a determination

23   whether to bind myself to it.

24        If I accept the plea agreement, then the Court

25   will sentence you consistent with that plea agreement.

1  Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  I'm going to ask the

4  Government now to tell us what the elements of the two

5  counts are that they brought against you and then to

6  tell us what facts the Government would prove if this

7  case were to go to trial.

8          Mr. Akinlapa, I want you to pay particular

9  attention to the facts, okay, because at the end of

10  it I'm going to ask you if you admit the facts that

11  Mr. Shah has stated are true.  Okay?

12          THE DEFENDANT:  Okay.

13          THE COURT:  Mr. Shah.

14          MR. SHAH:  Your Honor, as to Count I, the

15  enticement charge, there are four elements.  The first

16  is that Mr. Akinlapa knowingly coerced the person in

17  question, whose initials are AP, to engage in sexual

18  activity; second, that the Defendant did so using a

19  facility or means of interstate or foreign commerce,

20  which includes interstate telephone calls or

21  internet-based communications; three, that the person,

22  AP, was less than 18 years old; four, the sexual

23  activity was a criminal offense, and here the criminal

24  offense would be production of child pornography.

25          Count II is possession of child pornography.

1    There are four elements here:  First, that the

2    Defendant knowingly possessed an account, here an

3    iCloud account, that contained at least one image of

4    child pornography and that the Defendant knew that his

5    account contained at least one image of child

6    pornography and that the image of child pornography had

7    moved in interstate or foreign commerce, which includes

8    over the internet.  Those are the elements as to the

9    two offenses.

10        As to the facts that the Government would prove

11   were this matter to have proceeded to trial, these

12   facts which I will set forth, I am reading from

13   paragraph 4(a) through (e) of the plea agreement.

14        The facts that the Government would prove were

15   this matter to proceed to trial are as follows:  On

16   February 27th, 2020, using the Discord communications

17   application, Defendant exchanged text messages and

18   established a video connection with AP, who is a

19   10-year-old girl.

20        During the course of the interaction, Defendant,

21   through coercion, had AP disrobe and perform sexual

22   acts in front of her computer's video camera all while

23   Defendant watched and recorded portions on his Apple

24   iPhone.  During the interaction, Defendant was located

25   in Rhode Island and AP was in her home in Utah.

1       The interaction between AP and the Defendant

2   started with text messaging during which the Defendant

3   texted hyperlinks to AP and she used or activated the

4   links.

5       The interaction subsequently expanded to include

6   simultaneous video conferencing.  Defendant could text

7   with AP and see her through her computer's camera, but

8   AP could not see the Defendant.  His iPhone's camera

9   was facing a wall, not him.  The interaction also did

10  not include any voice communications, and verbal

11  communication was limited to texting.

12      Near the start of the video conference, AP

13  texted that she was interested in gymnastics and, at

14  Defendant's request, performed a split and then

15  headstand in front of her computer's camera.

16      Defendant asked her to remove her clothing down

17  to her undergarments.  When she resisted, the Defendant

18  threatened to post her address on the internet.  He

19  said that the hyperlink that she had earlier activated

20  had enabled him to acquire her home address.

21      After the threat, she removed her outer layer of

22  clothing.  Defendant then instructed her to remove her

23  underwear.  She complied.  Defendant instructed her to

24  position herself on her bed and insert a hairbrush

25  handle into her vagina and anus all in view of her

1    computer's camera.

2          She positioned herself on her bed facing her

3    computer's camera.  In the recording, she appears to

4    slide a hairbrush handle inside her vagina and then

5    under her buttocks.

6          As shown in the logs of his text messaging and

7    in his video conference recordings, Defendant

8    victimized 14 other females as follows:  On an unknown

9    date, Defendant coerced a pubescent girl to expose her

10   chest.

11         On June 16th, 2019, Defendant had a pubescent

12   girl expose her chest and vagina.  Defendant instructed

13   her to insert a plunger into her vagina, and in the

14   recording she appears to comply.

15         On July 23rd, 2019, the Defendant had ST, who

16   was at the time eight years old, expose her chest and

17   vagina and rub her chest.

18         On September 18th, 2019, Defendant, through

19   coercion, had MJ, who at the time was 11 years old,

20   expose her chest and vagina.  Defendant instructed her

21   to insert her fingers into her vagina, and in the

22   recording she appears to comply.

23         On October 28th, 2019, Defendant, through

24   coercion, had AK, who was at the time 14 years old,

25   expose her chest and vagina.  Defendant instructed her

1    to insert a hairbrush into her vagina, and in the

2    recording she appears to comply.

3         On December 7th, 2019, Defendant had a pubescent

4    girl expose her vagina.  Defendant instructed her to

5    insert her fingers into her vagina, and in the

6    recording she appears to comply.

7         On December 17th, 2019, Defendant, through

8    coercion, had AA, who was at the time nine years old,

9    expose her chest.  Defendant also attempted to have her

10   expose her vagina.

11        On February 23rd, 2020, Defendant, through

12   coercion, had EM, who was 10 years old at the time,

13   expose her chest and vagina.  Defendant instructed her

14   to insert her fingers into her vagina, and in the

15   recording she appears to comply.

16        On February 29th, 2020, Defendant, through

17   coercion, had RS, who was at the time nine years old,

18   expose her chest and vagina.

19        On March 2nd, 2020, Defendant, through coercion,

20   had KO, who at the time was 11 years old, expose her

21   chest and vagina.  Defendant instructed her to insert a

22   brush into her vagina, and in the recording she appears

23   to comply.

24        On March 31st, 2020, Defendant, through

25   coercion, had LAH, who at the time was 14 years old,

1    expose her chest and vagina.  Defendant instructed her

2    to insert her fingers into her vagina, and in the

3    recording she appears to comply.

4         On March 8th, 2020, Defendant had MP, who was at

5    the time 14 years old, expose her vagina.

6         On May 15th, 2020, Defendant had a pubescent

7    girl expose her chest and vagina.  Defendant instructed

8    her to insert a brush into her vagina.

9         On April 4th, Defendant, through coercion, had a

10   pubescent girl expose her chest and vagina.  Defendant

11   instructed her to insert a stick into her vagina, and

12   in the recording she appears to comply.

13        As shown in the logs of his text messaging and

14   in video conference recordings, in addition to the

15   victims identified above, Defendant sought to make

16   contact and video conference with at least 60 other

17   females and sought, through coercion, to force them to

18   perform sexual acts as he watched.

19        In the materials that have been reviewed, the

20   references to recording refer to Mr. Akinlapa engaging

21   his iPhone to record what is seen through the victim's

22   video cameras.  Those recordings were saved onto

23   Mr. Akinlapa's iCloud account.

24        Those are the facts that the Government's

25   evidence would show, your Honor, were this matter to

1    have proceeded to trial.

2              THE COURT:  Thank you, Mr. Shah.

3              Mr. Akinlapa, you heard the elements of the two

4    charges that the Government has brought against you.  I

5    again remind you they'd have to prove each and every

6    one of those elements beyond a reasonable doubt for you

7    to be found guilty of either or both of those charges.

8              You also heard the facts that the Government

9    says it would prove if this case were to go to trial.

10   Do you admit the facts that the Government has stated

11   as true?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Before I ask you about your change

14   of plea, Mr. Akinlapa, do you have any questions for

15   the Court or do you want to discuss any matter with

16   your attorney?

17             MR. VOCCOLA:  Do you have a question?

18             Your Honor, if I could have one moment, please.

19             THE COURT:  Of course.

20             (Defendant confers with counsel)

21             MR. VOCCOLA:  We're ready, your Honor.

22             THE COURT:  Mr. Akinlapa, how do you now plead

23   to the two counts contained in the Information that the

24   Government has brought against you, guilty or not

25   guilty?

1    THE DEFENDANT:  Guilty.

2    THE COURT:  The Court has heard from the

3    Government the evidence it would present if this matter

4    were to go to trial.

5    The Court has questioned Mr. Akinlapa about his

6    understanding of the nature of these proceedings and

7    the consequences of entering a plea of guilty to the

8    charges.

9    It is, therefore, the finding of this Court in

10   the case of the United States versus Akinola Akinlapa

11   that Mr. Akinlapa is fully competent and capable of

12   entering an informed plea, that he is aware of the

13   nature of the charges and the consequences of the plea

14   and that the plea of guilty is a knowing and voluntary

15   plea supported by an independent basis in fact

16   containing each of the essential elements of the

17   charge.  And, therefore, the plea is accepted, and

18   Mr. Akinlapa is now adjudged guilty of those offenses.

19   Sentencing will be set down for September 22nd

20   at 11:30.  September 22nd at 11:30.

21   Mr. Shah, anything further for the Government?

22   MR. SHAH:  Nothing further, your Honor.  Thank

23   you.

24   THE COURT:  Thank you.

25   Mr. Voccola, anything further for Mr. Akinlapa?

1          MR. VOCCOLA:  No, your Honor.  Thank you.

2          THE COURT:  Mr. Akinlapa, the conditions that

3    were placed on you at the time of your release when you

4    were originally arraigned remain in full force and

5    effect.  Do you understand -- until the time of

6    sentencing.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  With that, we'll stand

9    adjourned.  Thank you, everybody.

10         (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C (e) R T I F I C A T I O N

2

3

4              I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5       hereby certify that the foregoing pages are a true and

6       accurate transcription of my stenographic notes in the

7       above-entitled case.

8

9                    February 13, 2023_____

10                   Date

11

12

13                   /s/ Karen M. Wischnowsky_____

14                   Karen M. Wischnowsky, RPR-RMR-CRR
                     Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25