```
                    IN THE UNITED STATES DISTRICT COURT

                       FOR THE DISTRICT OF RHODE ISLAND


   * * * * * * * * * * * * * * *    C.R. NO. 20-57-JJM
                                *
   UNITED STATES OF AMERICA     *
                                *
        VS.                     *   APRIL 20, 2022
                                *   2:00 P.M.
   AKINOLA AKINLAPA             *
                                *
   * * * * * * * * * * * * * * *    PROVIDENCE, RI


            BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

                               CHIEF JUDGE

                               COURTROOM 1


                              (Frye Hearing)


   APPEARANCES:

   FOR THE GOVERNMENT:     MILIND M. SHAH, AUSA
                           U.S. Attorney's Office
                           50 Kennedy Plaza
                           Providence, RI  02903

   FOR THE DEFENDANT:      JOANNE M. DALEY, ESQ.
                           Federal Defender's Office
                           10 Weybosset Street
                           Providence, RI  02903

   Court Reporter:         Karen M. Wischnowsky, RPR-RMR-CRR
                           One Exchange Terrace
                           Providence, RI  02903
```

```
1    20 APRIL 2022 -- 2:00 P.M.
2         THE COURT:  Good afternoon, everyone.  We're
3    here today to conduct what we call a Frye hearing,
4    which I'll explain in a minute, in the case of the
5    United States versus Akinola Akinlapa, Criminal
6    Action 20-57.
7         Would counsel identify themselves, please.
8         MR. SHAH:  Your Honor, Milind Shah for the
9    United States.
10        THE COURT:  Great.  Good afternoon, Mr. Shah.
11        MR. SHAH:  Good afternoon.
12        MS. DALEY:  Good afternoon, your Honor.  Joanne
13   Daley for the Defendant, Akinola Akinlapa.
14        THE COURT:  Good afternoon, Ms. Daley.
15        Good afternoon, Mr. Akinlapa.
16        THE DEFENDANT:  Good afternoon.
17        THE COURT:  How are you?
18        THE DEFENDANT:  Fine.
19        THE COURT:  Is it all right if I call you
20   Akinola?
21        THE DEFENDANT:  Yes.
22        THE COURT:  I can call you by your first name?
23   Is that okay?
24        THE DEFENDANT:  Yes.
25        THE COURT:  Okay.  Akinola, I told you that this
```

1    is a *Frye* hearing.  What that means is that when the
2    Government has made a plea offer to a Defendant and the
3    Defendant has turned it down, said "no" to it, that we
4    have a hearing to make sure on the record everybody
5    knows what the offer from the Government was, what the
6    consequences of going to trial are, and what the jail
7    time could be if you went to trial and were found
8    guilty.
9           And we're going to put all that on the record
10   now.  We're going to make sure that there's no
11   misunderstanding about it and that you understand what
12   the plea agreement is, what the offer to you is if you
13   were to plead guilty, and what the consequences of
14   going to trial are, that is, what the punishment would
15   be if you were to go to trial.  And we're going to talk
16   about all that and put that on the record.  Okay?
17          THE DEFENDANT:  Okay.
18          THE COURT:  So you understand what the purpose
19   of this hearing is?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Okay.  Can you tell me why we're
22   here?  Why are we at this hearing?  Akinola, you can
23   take your mask off.  Okay.  Great.  Do you know why
24   we're here?
25          THE DEFENDANT:  Yes.

1          THE COURT:  Why are we here?
2          THE DEFENDANT:  To put on the record if I accept
3    the plea deal or not.
4          THE COURT:  Okay.  And what that would be and
5    also to put on the record what would happen if you went
6    to trial, okay, and what the results of that would be.
7    Do you understand that?
8          THE DEFENDANT:  Yes.
9          THE COURT:  Okay.  Great.  So I'm going to --
10   we're going to do this one step at a time.  I'm going
11   to ask first Mr. Shah, he represents the Government,
12   I'm going to ask him to tell us what the plea agreement
13   was that was offered to you.  Okay?
14         THE DEFENDANT:  Okay.
15         MR. SHAH:  Your Honor, would you like me to
16   approach or speak from here?
17         THE COURT:  I think it would be good for you to
18   approach.
19         MR. SHAH:  Your Honor, the Government has
20   offered a plea agreement.
21         THE COURT:  Mr. Shah, if you want to take your
22   mask off when you speak, that's fine with me.
23         MR. SHAH:  Thank you, your Honor.  The
24   Government has offered a plea agreement in this matter.
25   Under the terms of the plea agreement, in exchange,

1  under the terms of the plea agreement, the Defendant
2  would agree to prosecution by way of an Information.
3  　　　　　The Information would charge two counts:
4  Enticement of a minor to engage in illicit sexual
5  activity and possession of child pornography.
6  　　　　　By virtue of pleading to those two counts, the
7  Defendant would be subject to a 10-year mandatory
8  minimum term of incarceration.
9  　　　　　THE COURT:  Is it a binding plea, Mr. Shah?
10  　　　　　MR. SHAH:  It would be not a binding plea.  The
11  Court is free, within the floor of the guidelines and
12  above, to sentence as the Court deems appropriate.
13  　　　　　Your Honor, let me go through the two counts and
14  the penalties of the two counts of the Information, and
15  then let me contrast that with what's pending should we
16  go to trial.
17  　　　　　The two counts of the Information, starting with
18  enticement, enticement carries a maximum penalty of 30
19  years -- excuse me.  Enticement carries a maximum
20  penalty of life and a minimum term of 10 years.  It
21  also carries a life term of supervision, a $250,000
22  fine and a $100 special assessment.
23  　　　　　Possession of child pornography carries a
24  maximum term of 10 years, no mandatory minimum term of
25  incarceration, a life term of supervised release, a

1    $250,000 fine and a $100 special assessment.  Those are
2    the maximum penalties.
3              Under the terms of the plea agreement, the
4    Defendant could argue for any term of incarceration of
5    10 years or above; and the guidelines range that
6    applies suggests, but does not bind the Court to, a
7    term of 210 months to 262 months.
8              So in the simplest terms, under the plea
9    agreement, the Defendant would be subject to a floor of
10   10 years and a maximum term of incarceration of 262
11   months, which is approximately 22 years.
12             Should this matter proceed to trial, your Honor,
13   the Indictment as presently set forth charges three
14   offenses; and sticking to the simplest description of
15   this Indictment, the floor is 15 years because the
16   first count carries a mandatory minimum term of 15
17   years.
18             Also, by contrast, the guidelines that would
19   apply should we go to trial are significantly greater.
20   The guideline range is 324 months to 405 months.
21             So contrasting the plea agreement to going to
22   trial, the plea agreement sets a floor of 10 years, and
23   it would be up to the Court to determine up to 262
24   months whether anything greater than 10 years is
25   appropriate.  Going to trial sets a floor of 15 years

```
 1       and a maximum term of 405 months.
 2              THE COURT:  Actually, the maximum term on
 3       exploitation is life; right?  The guideline high end is
 4       405.
 5              MR. SHAH:  Yes, your Honor.  So it would run
 6       from 200 -- excuse me, 15 years to life.  Those are the
 7       primary differences between the two, your Honor.
 8              THE COURT:  And, Mr. Shah, can you briefly
 9       summarize what the facts are that the Government would
10       prove beyond a reasonable doubt if this case were to go
11       to trial.
12              MR. SHAH:  Yes, your Honor.  Were this matter
13       to go to trial, the Government's evidence would
14       establish the following:  It would establish that on
15       February 27th, 2020, the Defendant used a
16       communications application called Discord.
17              Using that application, he exchanged text
18       messages and established a video conference with a
19       10-year-old girl.  That 10-year-old girl was
20       communicating with the Defendant from Utah.  The
21       Defendant was in Providence, Rhode Island.
22              During the course of their video interaction,
23       the Defendant, through coercion, had this 10-year-old
24       girl disrobe and perform sexual acts in front of her
25       computer video camera all the while the Defendant
```

1  watched and recorded the interaction using his Apple
2  iPhone.
3       The interaction between the Defendant and the
4  10-year-old girl started with text messaging.  During
5  that text messaging, the Defendant texted a hyperlink
6  to the girl.  She used it or she activated or clicked
7  on the link, and then the interaction subsequently
8  expanded to include simultaneous video conferencing.
9       The Defendant could text with AP -- excuse me,
10 could text with the 10-year-old girl and see her
11 through her computer's camera.
12      Near the start of the video conference, the girl
13 texted that she was interested in gymnastics, and at
14 the Defendant's request she performed splits and then a
15 headstand in front of the computer's camera.
16      The Defendant asked her to remove her clothing
17 down to her undergarments.  When she resisted, the
18 Defendant threatened to post her address on the
19 internet.  He said that the hyperlink that she had
20 earlier activated had enabled him to acquire her home
21 address.
22      After the threat, the 10-year-old removed her
23 outer layer of clothing.  The Defendant then instructed
24 her to remove her underwear.  She complied.  The
25 Defendant instructed her to position herself on her bed

1  and insert a hairbrush handle into her vagina and anus,
2  all in view of her computer's camera.
3       At Defendant's direction, she positioned herself
4  on her bed so as to face her computer's camera.  In the
5  recording, she appears to slide a hairbrush handle into
6  herself and then in between her buttocks.
7       As part of this investigation and what would be
8  shown at trial is the log of the Defendant's text
9  messaging and his video conference recordings related
10 to similar interactions the Defendant had with other
11 victims.  There are quite a few of them.
12      On a date unknown, the Defendant coerced a
13 pubescent girl to expose her chest in the same manner I
14 described just earlier with respect to the 10-year-old
15 girl.
16      On June 16th, 2019, the Defendant had a
17 pubescent girl expose her chest and vagina.  The
18 Defendant instructed the girl to insert a plunger into
19 her vagina, and in the recording she appears to comply.
20      On July 23rd, 2019, the Defendant had a girl who
21 at the time was eight years old expose her chest and
22 vagina and rub her chest.
23      On September 18th, 2019, the Defendant, through
24 coercion, had an 11-year-old expose her chest and
25 vagina.  The Defendant instructed her to insert her

1   fingers into her vagina, and in the recording she
2   appears to comply.
3           On October 28th, 2019, the Defendant, through
4   coercion, had a 14-year-old expose her chest and
5   vagina.  The Defendant instructed her to insert a
6   hairbrush into her vagina, and in the recording she
7   appears to comply.
8           There are several others.  All in all, logs
9   related to Defendant's text messaging and video
10  conference recording identify at least 60 other minor
11  females who the Defendant sought, through coercion, to
12  force the performance of sexual acts all as he watched.
13          That, in brief, your Honor, is what the
14  Government's evidence would show.  Most of this
15  evidence would be obtained from video recordings that
16  the Defendant prepared and saved onto an iCloud
17  account.
18          Also as evidence would be the Defendant's own
19  statements admitting to some of these activities.
20  Those were admissions made immediately after his arrest
21  and after being advised of his Miranda rights.
22          THE COURT:  Thank you very much, Mr. Shah.
23          Ms. Daley, have you explained the terms of the
24  plea agreement that the Government has offered your
25  client to him?

1     MS. DALEY:  Yes, your Honor.  Both I and
2  Attorney Aitchison have explained -- I'm sorry, your
3  Honor.  Yes, your Honor, the terms of the plea
4  agreement have been read and explained on more than one
5  occasion by myself and Attorney Aitchison.
6     THE COURT:  Okay.  And have you also explained
7  to Akinola the potential penalties that could be
8  imposed if he went to trial and was found guilty?
9     MS. DALEY:  Yes, your Honor, and also the
10 potential penalties if the Government were to supersede
11 and bring additional charges.
12    THE COURT:  Okay.  Great.  You know what might
13 be good, Ms. Daley and Akinola.  Why don't you both
14 come forward to this podium.
15    Akinola, this courtroom is so big that it's
16 oftentimes hard to talk to somebody.  And you're
17 welcome to take your mask off if you want or not.  It's
18 up to you.
19    Akinola, what's important for me as the Court to
20 do is to make sure that you understand what's on the
21 table, what's available, and what the consequences of
22 taking that would be or what the consequences would be
23 of not taking that.  Do you understand what I'm going
24 to try and do?
25    THE DEFENDANT:  Yes.

1      THE COURT: Okay. So let me do two things. Let
2 me explain the plea agreement to you. That is what the
3 Government has offered you in exchange for you pleading
4 guilty that will end all of -- any charges against you.
5      The Government has offered to file charges
6 against you. They call it an Information. They agreed
7 to file charges against you that would lower the
8 mandatory minimum jail time to 10 years so that that
9 charge against you, if you were to plead guilty
10 pursuant to the plea agreement, would mean that there
11 would be a mandatory minimum of just 10 years. Okay?
12     Let me explain what that 10 years means. And I
13 know your lawyer explained all this to you, but the
14 importance of this is to make sure we put it on the
15 record; and as the Court, I need to make sure that you
16 understand it as well. Okay?
17     So if you were to plead guilty under the plea
18 agreement and if the Court were to charge -- were to
19 sentence you to the mandatory minimum of 10 years, that
20 would mean, assuming good behavior while you're in
21 prison, and I don't -- from what I hear of you, I
22 imagine good behavior will be what you do, that you
23 would end up serving under that plea agreement about
24 eight-and-a-half years. Okay? That's if you accept
25 the plea agreement. Do you understand that?

1         THE DEFENDANT: Yes.
2         THE COURT: Okay. Can you tell me what you
3 believe the plea agreement is, Akinola.
4         THE DEFENDANT: There's a mandatory minimum of
5 10 years.
6         THE COURT: Of 10 years. And how much of that
7 10 years would you have to serve if you got all your
8 good behavior credit?
9         THE DEFENDANT: Eight-and-a-half.
10         THE COURT: About eight-and-a-half years. Okay.
11 That's what the plea agreement would offer you. You
12 understand that?
13         THE DEFENDANT: Yes.
14         THE COURT: Okay. Now let me explain to you if
15 you reject the plea agreement and go to trial, either
16 under the current Indictment or under further charges
17 that the Government might bring against you, if you
18 were to go to trial on the charges and you were to be
19 found guilty of some or all of those charges, the
20 mandatory minimum then would rise to 15 years.
21         I would have no choice, I'm telling you now, the
22 law would not allow me to give you less than 15 years
23 in prison if you were to reject the plea agreement and
24 go to trial and be found guilty.
25         But the law also tells me that I could sentence

1   you up to a lifetime in prison.  I could make you serve
2   the rest of your life in prison if you are found guilty
3   of these charges.
4           Let me add one more thing.  One of the things
5   that helps the Court in deciding what the right
6   sentence is, we call them guideline range.  If you were
7   to go to trial and to be found guilty, the guideline
8   range that tells the Court that's kind of what you
9   should look at for sentencing is about 30 to 40 years.
10          So if you were to go to trial and you were to be
11  found guilty, the guidelines tell me that you deserve
12  30 to 40 years in prison, okay, with a mandatory of 15;
13  but the guidelines tell me that 30 to 40 years is
14  what's appropriate.  Okay?
15          That's compared to the plea agreement, which is
16  still on the table, of 10 years mandatory minimum.
17  Okay?  Do you understand that?
18          THE DEFENDANT:  (Nods affirmatively).
19          THE COURT:  So if you were to go to trial,
20  Akinola, and you were to be found guilty, what's the
21  likely sentence you would get, do you think, from what
22  I've told you?
23          THE DEFENDANT:  Thirty to 40.
24          THE COURT:  Thirty to 40 years is what the
25  guidelines tell us.  And what's the mandatory minimum

1   where I would have no choice if you were to go to
2   trial?
3           THE DEFENDANT:  Twenty?
4           THE COURT:  Fifteen.
5           THE DEFENDANT:  Fifteen.
6           THE COURT:  So if you were to go to trial and be
7   found guilty, I would have to give you 15 years in
8   prison; but the guidelines tell me I should give you
9   about 30.  Okay?
10          If you were to accept the plea agreement, then
11  the Court would be required to give you at least 10
12  years, which means you serve about eight-and-a-half.
13  Do you understand that?
14          THE DEFENDANT:  (Nods affirmatively).
15          THE COURT:  Okay.  I'm not going to ask you
16  right now because I think you need to have a conference
17  with your lawyer about it, but I understand so far
18  you've rejected the plea agreement; but what my goal
19  is, and my goal in this whole thing is to make sure you
20  have a fair trial, okay, and that all of your rights
21  are preserved and that you understand the consequences
22  of what could happen in the system.  That's my job
23  here.
24          Your lawyer's job is to represent you, and the
25  Government's job is to present the case; but what's

1   important to me is that you understand that there are
2   kind of two options.  One is to accept the 10-year plea
3   agreement, mandatory minimum plea agreement, or go to
4   trial where if you were found guilty the guideline
5   range tells me 30 years is the appropriate sentence.
6   Okay?  Do you understand the two options?
7         THE DEFENDANT:  Yes.
8         THE COURT:  Okay.  And there are no options in
9   between.  Those are the options.  Okay?  Do you think
10  you understand that, Akinola?
11        THE DEFENDANT:  Yes.
12        THE COURT:  Okay.  Do you want to maybe just
13  tell me what you think that is simply.  What are the
14  two options?
15        THE DEFENDANT:  Ten years or 30 to 40.
16        THE COURT:  Ten years or 30 to 40.  That's a
17  good way to look at it.  Okay.
18        Ms. Daley, is there anything further that you
19  think that the Court should cover?
20        MS. DALEY:  I don't believe so, your Honor.
21        THE COURT:  Mr. Shah, anything further for the
22  Government?
23        MR. SHAH:  Nothing further.  Thank you.
24        THE COURT:  Did either of you want to see me or
25  are we all set?

```
 1              MS. DALEY:  Your Honor, if I could have a brief
 2    recess to speak to Mr. Akinlapa.
 3              THE COURT:  Sure.
 4              MS. DALEY:  And then if we need to see the Court
 5    again, I can let --
 6              THE COURT:  So we'll take a recess or adjourn,
 7    depending on what Ms. Daley tells me about what the
 8    needs of her client are.
 9              MS. DALEY:  Thank you, your Honor.
10              THE COURT:  Thanks, all.
11              (Recess)
12              (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T I O N

I, Karen M. Wischnowsky, RPR-RMR-CRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

August 4, 2023
Date


/s/ Karen M. Wischnowsky

Karen M. Wischnowsky, RPR-RMR-CRR
Federal Official Court Reporter