UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AKINOLA AKINLAPA | Criminal Case No. 20-cr-00057-JJM-LDA |

## GOVERNMENT'S SENTENCING MEMORANDUM

**I.   Recommendation.**

Through deception and coercion Defendant had AP, a ten-year old child, join a video conference, disrobe, and perform sexual acts on camera while Defendant watched and recorded.  (PSR at ¶¶ 11-13).  Through this same sort of deception and coercion, Defendant victimized 14 other female children, ranging from eight to fourteen years of age, by having them disrobe and perform sexual acts on camera while Defendant watched and recorded.  (PSR at ¶ 14(a)-(n)).  Through this same sort of deception and coercion, Defendant tried have at least another 60 minor females disrobe and perform sexual acts on camera while Defendant watched and recorded.  (PSR at ¶ 15).

Under 18 U.S.C. § 3553, principally subsections (a)(1) and (a)(2)(A) and (C), for the profound and lasting harm Defendant caused for so many and tried to cause for so many more, the government recommends a 15-year term of incarceration on each of the two counts of the Information, with the sentences running concurrently.  To protect the public from future harms and per recommendation of the Guidelines § 5D1.2(b)(2) for each of the offenses of conviction here, the government recommends a life term of supervision.  The government recommends $10,200 in fines or assessments:  a $200

mandatory special assessment, $100 per count, applies under 18 U.S.C. § 3013, and an additional $10,000 assessment, $5,000 per count, applies under 18 U.S.C. § 3014 for non-indigent persons.

The 15-term of incarceration, which is above the applicable ten-year mandatory minimum, is warranted by the number of victims, depth of harm and attempted harm, and duration of criminal activity. The government recommends less than the life-term recommended by the Guidelines to account for the Defendant's youth and condition.

## II.     Offense Conduct.

As described in the PSR at ¶¶ 11-13 and Criminal Complaint affidavit at ¶¶ 6-9 (Dkt. No. 1-1), on February 27, 2020, Defendant entered into a text exchange with a fellow user of Discord, an electronic communications application. The fellow user was AP, a ten-year old girl. Promising credits for use on Roblox, an online gaming platform, Defendant texted a hyperlink to AP, and AP activated the hyperlink. (The hyperlink did not link to Roblox credits; unbeknownst to AP, the hyperlink provided Defendant with AP's IP address.) Shortly thereafter, Defendant and AP entered into video conference. Although Defendant could see AP through her computer's video camera, AP could not see Defendant. Defendant had the camera of his computer device, an iPhone, facing a wall, not himself. Defendant's Discord handle, "Melissa#7384", also did not reveal his identity. Also cloaking his identity, Defendant did not engage voice communications during the video conference. AP could not tell that she was communicating with an adult male. Even after the video conference was established, communications between Defendant and AP continued to proceed by text message.

As described in the PSR at ¶ 13 and the Criminal Complaint affidavit at ¶ 10, after initial rapport building, Defendant moved to coercion. Near the start of the video conference, AP texted that she was interest in gymnastics. At Defendant's request, AP performed a split and then a headstand in front of her computer's camera. Defendant then asked AP to removed her clothing, down to her undergarments. When AP resisted, Defendant threatened to post her address on the internet. Defendant said that the hyperlink that AP had earlier activated enabled Defendant to acquire AP's home address. After the threat, AP removed her outer layer of clothing. Defendant asked AP to remove the rest, and she did, standing entirely disrobed in front of her computer's camera. Defendant instructed AP to position herself on her bed and insert a hairbrush handle into her vagina and anus, all in view of her computer's camera. AP partially complied. She positioned herself on her bed facing her computer's camera. She then made it appear as though she was sliding a hairbrush inside her vagina and then into her buttocks. Defendant's iPhone and/or the pertinent applications he was using on his iPhone had been set to record this interaction and save it and others like it.

As described in the PSR at ¶¶ 14 and 15, Defendant's deception and coercion was not limited to AP. From records of his text messaging and video conference recordings on his iCloud account, investigators found Defendant's interactions with fourteen other female children between June 2019 and April 2020. Investigators were able to identify ten of these fourteen girls; they ranged in age from eight to fourteen. The remaining four could not be identified but the video recordings showed that they were prepubescent girls. Using deception and coercion in a manner

3

similar to that used with AP, Defendant had each of these fourteen girls disrobe and show themselves before their computers' cameras, and at least eight of the fourteen were instructed to perform more explicit sex acts.

As described in the PSR at ¶ 15, Defendant's text message logs and video conference recordings also showed that he sought to reach out to 60 other minor females and sought through coercion to force them to perform sexual acts as he watched.

### III. Defendant's Knowledge of the Wrongfulness of His Conduct.

The evidence developed by the FBI's investigation established that Defendant knew that what he was doing was wrong. First, the manner in which he committed his crimes demonstrated that he knew that what he was doing was wrong. In his interactions with ten-year-old AP, the fourteen other victimized minor females, and the 60 other minor females who he attempted to victimize, he purposefully disguised his identity using the Discord handle "Melissa#7385". In the video conferences with ten-year-old AP and the fourteen other victimized minor females, he purposefully avoided showing his face and having his voice heard. He took these purposeful steps to avoid identification, because he knew that what he was doing was wrong.

Second, his statements in the non-custodian interview by investigators showed that he knew that what he had done was wrong. On June 3, 2020, Defendant was interviewed, as agents were executing a search warrant at his home. (Dkt No. 79-2 ("Interview Report") at 1). Early in the interview and consistent with knowing that what he had done was wrong, Defendant said that he knew why investigators were in

his home, asked whether anyone had reported him, and suggested that he may have been hacked. (*Id.* at 1-2). As the interview continued and the allegation of hacking was dispelled, Defendant tried to mislead and minimize. (*Id.* at 2). He described his lure – the offer Roblox credits – as his "trolling" and "my jokes, trolling." (*Id.*). He suggested that he had the girls do "challenges" to get the credits, akin to doing TikTok videos. (*Id.* 2-3). When asked whether the "challenges" involved the girls disrobing, he claimed that it "depended" on "whether they wanted to or not." (*Id.* at 3). He also claimed that he would have the girls do "poses" and sexual acts only "if they wanted to." (*Id.* at 3). Defendant's characterizations and minimization are inconsistent with what he actually did as shown in the iCloud videos and text logs, which are described in Section II above, the Criminal Complaint affidavit, Defendant's own later admissions in the plea agreement of what he did (Dkt. 40 at ¶4), and Defendant's own admission at the change of plea of what he did (Dkt. 79-8 (trans. of change of plea) at 19:14-25:1; 25:2-26:1). Defendant was mischaracterizing his behavior and minimizing it because he knew that what he had been doing was wrong.

  Third, Defendant's effort to game his neuropsychological evaluation, another instance of minimization and misleading, corroborated that he was knowingly trying to mislead investigators. Defendant's own neuropsychological evaluator found that Defendant "had feigned or exaggerated many of the cognitive impairments registered" by the evaluator's testing. (Dkt. 49-2 ("Dr. Rinn's Neuropsychological/Behavioral

5

Consultation Report") at 9[1]).  After having been charged in this case, he strategized that by appearing to be highly disabled, he could ameliorate his circumstances.  He was doing the very same thing when he attempted to mislead investigators and minimize his behavior.  These twice-repeated efforts to strategize his way out of trouble showed cunning and showed that his efforts in both instances were not the product of confusion or misunderstanding.  He knew that what he had done was wrong, and he was trying to escape accountability.

Fourth, Defendant's own neuropsychological evaluator found that Defendant "knew that [his] behavior could get him into trouble if it were discovered[.]"  (*Id.* at 10).  The evaluator noted that Defendant possessed "normal intelligence, normal memory, and [a] normal ability to learn, understand, retain, and apply new information."  (*Id.*)  The evaluation noted that Defendant had "normal comprehension abilities and normal abilities to strategize, to weigh alternative course of action, if structured into doing so."  (*Id.* at 11).  The evaluator explained that those suffering from Asperger's syndrome, like Defendant, did not generally have substantial cognitive impairments.  (*Id.* at 19).  Indeed, Defendant's academic performance suggested strong cognitive skills.  (*Id.* at 2-3, 9, 16-17).  For example, he was "accepted to a four-year engineering program at Johnson and Wales University[,]" and in his senior year of high school, he achieved passing grades in advanced placement calculus and advance placement U.S. history and As or Bs in British literature, advanced placement computer science, and pre-engineering III.

---

[1] For the report, citations are to the report's pagination appearing at the bottom of each page, not the filing pagination in the header.

(*Id.* at 16).  Cognitive deficits did not impair Defendant's understanding that what he had done was wrong.

### VI.  Asperger's Syndrome and Appropriate Sentence.

Although Defendant knew that his conduct could get him into trouble, he nonetheless did what he did again and again over an extended time:  at least 75 times from June 2019 to April 2020.  Defendant only stopped when the potential for getting into trouble became a reality.  The possibility of getting into trouble was not by itself enough to deter.  Both the seriousness of the offenses and the heightened need for deterrence are germane and paramount under 18 U.S.C. §3553(a)(1).  Assuming *arguendo* that Defendant's Asperger's may have made it difficult for him to place himself in the mindset of his victims (*id.* at 4, 10),[2] from a sentencing perspective, what matters is that he knew that what he was doing wrong in that it could get him into trouble and that he did it anyway.  Assuming *arguendo* that Defendant's condition diminishes his culpability for his offenses, such considerations are taken into account in the recommendation of 15 years, instead of the life-term recommended by the Guidelines.  The applicable mandatory minimum of 10 years does not adequately account for Defendant's almost year long spree.

---

[2] There is reason to believe that Defendant, in fact, has a substantial ability to put himself into the mindset of his victims.  Integral to his criminal modus operandi was threatening children so as to get them to perform sex acts.  He knew enough about his victims' mindsets to devise and execute a method that ensured compliance with his demands.

7

## V.     Conclusion.

For the aforementioned reasons, the Government recommends a 15-year term of incarceration, a substantial downward departure from the Guidelines recommendation; a life term of supervision; and $10,200 in fines or assessments.[3]

           Respectfully submitted,

           UNITED STATES OF AMERICA
           By its Attorney,

           ZACHARY A. CUNHA
           United States Attorney

           /s/ Milind Shah
           Milind Shah
           Assistant U.S. Attorney
           U.S. Attorney's Office
           One Financial Plaza, 17th Floor
           Providence, RI 02903
           Tel (401) 709-5000
           Fax (401) 709-5001
           Email:  milind.shah@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that today, January 9, 2024, the above sentencing memorandum was filed using the Court's electronic filing system and that the response and exhibits were thereby made available to Defendant's Counsel, Jay Dixon-Acosta of 899 Warren Avenue, Suite 2, East Providence, Rhode Island 02914.

           /s/ Milind Shah
           Milind Shah
           Assistant U.S. Attorney

---

[3] The Government notes that per 18 U.S.C. §§ 3143(b)(2) (which references the mandatory detention provisions of subsections (B) and (E) of 18 U.S.C. § 3142(f)(1)), post-sentence Defendant must be detained and may not be released pending appeal.