UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | Cr. No. 1:20-cr-00057-JJM-LDA |
| | : | |
| AKINOLA AKINLAPA | : | |

### ADDENDUM TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Akinlapa incorporates and continues to rely upon the motion for a downward variance and supporting memorandum filed by prior counsel, as amended through redaction and submitted to accompany this sentencing memorandum.

AKINOLA AKINLAPA,
By His Attorney,

DATED: January 9, 2024

/s/ J. Dixon-Acosta, Esq. (#8692)
899 Warren Avenue, Suite 2
East Providence, RI 02914
P: (401) 584-4404
F: (401) 234-1367
jadaesq@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2024, I electronically filed a copy of this Motion to Continue via the electronic filing system of the United States District Court for the District of Rhode Island.

/s/ J. Dixon-Acosta, Esq.

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

V.                                                          Docket no.: 0103 1:20CR00057-001

AKINOLA AKINLAPA

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

Now comes the defendant, Akinola Akinlapa, by and through undersigned counsel, and respectfully moves this Honorable Court to grant him a downward variance from his sentencing guideline range of life imprisonment to a sentence of one hundred and twenty (120) months imprisonment with mandatory treatment conditions.

As grounds therefore, Defendant relies on the grounds set forth in the attached memorandum of law.

Respectfully Submitted,
Akinola Akinlapa
By his attorney,

*/s/ Joseph J. Voccola*
Joseph J. Voccola #4132
454 Broadway
Providence, RI 02909
Tel: 401-751-3900
Fax: 401-751-8983

**Dated: October 4, 2022**

## CERTIFICATION

      I hereby certify that on the above date a true and accurate copy of the within was filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to: Milind Shah Esquire, United States Attorney's Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903.

                                                                                         /s/ Joseph J. Voccola

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

V.                                                        Docket no.:     1:20CR00057-001

AKINOLA AKINLAPA

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE FROM RECOMMENDED SENTENCING GUIDELINE RANGE**

The Defendant, Akinola Akinlapa, submits this memorandum in support of his motion for a downward variance from his sentencing range of life imprisonment to a sentence of one hundred and twenty (120) months, the mandatory minimum term of imprisonment.

### Background

Defendant repeats here, the paragraphs appearing under the section entitled 'BACKGROUND' of William E. Rinn's (Ph.D.) Consultation Report:

> "This is an 18 year old male who is charged with criminal online sexual conduct, related to an incident on 2/27/2020, in which he allegedly coerced a IO-year-old girl to commit lewd acts in front of a WebCam, which he then recorded. The child's mother reported the incident to local police who enlisted the assistance of the FBI, who traced the online activity to this defendant. A grand jury returned indictments on three counts, including sexual exploitation of a child, receipt of child pornography, and possession of child pornography.
>
> Mr. Akinlapa's parents emigrated to the United States from Nigeria more than two decades ago and are naturalized American citizens. His sister reports that his primary language was English, although his mother occasionally spoke in the native language of Nigeria (Yoruba). At least in part because of their cultural traditions, the defendant, his sister, and his father have all emphasized to me that no one in the family consumes alcohol or engages in any form of substance abuse. They describe themselves as Americanized but culturally conservative and behaviorally temperate.
>
> His mother works as a teacher. His father is employed in a metal fabrication factory. The defendant is the youngest of four siblings, all of whom have advanced educational degrees and responsible employment positions. This includes one brother who reportedly has a mild form of Down's syndrome.

1

Mr. Akinlapa has no criminal record. A review of his school records indicates no disciplinary actions, no indications of truancy or behavior problems of-any sort. He attended public schools in Providence Rhode Island. A review of school records indicates significant early struggles with language development and literacy, but with supplemental instruction and structuring, he showed gradual improvement and good academic performance by his senior year of high school. He reports (and his sister confirms) that he routinely received teacher or tutor help with his homework, which he did in school after the end of classes. He was driven to school and picked up from school by his mother every day. He describes making no friends, and having no consistent social interactions with anyone other than his siblings, all of whom are at least IO years older. His sister recalls him mentioning minor interactions with schoolmates but notes that no friends ever visited the house, nor did he go to their houses or interact with them in any other context.

He graduated from high school in 2020, and had been accepted to a four-year engineering program at Johnson and Wales University in Providence. However, the acceptance was rescinded after he was charged on the current child pornography proceedings.

The defendant has never married and has reportedly had no intimate or romantic relationships, or even friendships in his life. He is a sexual virgin. It appears that he has had online interactions with persons with whom he has engaged in online video games, but he reportedly does not know these individuals personally. His sister reports that he interacts primarily with his siblings in playing these video games. He has never had a driver's license and does not know how to operate a motor vehicle. He reports, and his family confirms, that he has does not engage in any form of interpersonal play activities with the exception of video games. He reports that he minimally listens to music. He has no employment history, part-time or otherwise. He was on an afterschool volleyball team, but apparently made no social connections in that context. He engaged in no other extracurricular activities.

I do not have a full medical record on this individual, but I know of no indications of major medical issues or documented mental illness. His school records and personal history strongly suggest developmental disabilities (which I will discuss in a later section of this report), but this does not appear to have been formally diagnosed."

Defense Counsel adds to it, the following. Since Defendant's release on conditions (which conditions Defendant has complied with- See PSR, page 4, paragraph 7), he has been tested, evaluated, and received counseling. Initially counseling was at the behest of probation. Later,

Defendant independently sought out treatment and counseling. Defendant has been evaluated and/or treated/diagnosed by the following individuals:

1) Linda Rexford MD of Anchor Medical Associates;
2) Walter Goula MD of Anchor Medical Associates;
3) Dmitry Meyerson, Ph.D. of CPATS (Comprehensive Psychological Assessment Services);
4) Clinician Scott Greenspan of Thrive Behavioral Health (referred to by U.S. Probation);
5) William E. Rinn, Ph.D. of Spaulding Rehabilitation Hospital, Boston

Evaluation and treatment reports of the above-named individuals have been attached to this memorandum. **(See Exhibits A-E, annexed hereto)**

Defendant disputes that part of the PSR entitled 'Mental and Emotional Health' in so far as it states that he was diagnosed to be suffering from autism spectrum disorder by his pediatrician, Dr. Linda L. Rexford, MD. Said diagnosis was not made until he was evaluated by William E. Rinn, Ph.D. in September of 2020, and then confirmed by others.

## ARGUMENT

A court may sentence an individual to a sentence outside of the 'Sentencing-Guideline Range' as long as the judge considered the guidelines, and the sentence reasonably reflects the statutory sentencing factors set forth in 18 U.S.C.A. section 3553. *United States v. Booker*, 543 U.S. 220, 261, 125 S.Ct 738, 160 L.Ed.2d 621 (2005); *United States v. Montijo-Maysonet*, 947 F.3d 34 (1st Cir 2020).

A 'variance' outside the guideline range should occur after consideration of all relevant departure provisions. *Gall v. United States*, 522 U.S. 38, 46-47 (2007) ("We reject, however, an

3

appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.")

Courts have held that variances are not subject to the guideline analysis for departures. *United States v. Fumo*, 655 F.3d 288, 317 (3rd Cir. 2011) as amended (Sept. 15, 2011). In some situations, a prohibited ground for departure may be a valid basis for a variance. *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009)

A sentence will not be disturbed if it achieves the purposes of sentencing as stated in section 3553(a). *United States v. Talley*, 431 F.3d 784 (11th Cir.2005). A court is not required to state on the record that it considered each 3553(a) factor or to discuss each factor, as long as it correctly calculates the Guideline range and gives specific, valid reasons for sentencing lower than the advisory range. *United States v. Dixon*, 449 F.3d 194, 205 (1st Cir. 2006); *United States v. Turbides-Leonardo*, 468 F.3d 34 (1st Cir 2006); *United States v. Williams*, 435 F.3d 1350 (11th Cir 2006).

### 3553(a) FACTORS:

**A. History and Characteristics of the Defendant**

A Defendants age, lack of prior criminal record and mental health, are all valid considerations when considering the appropriate sentence for a defendant convicted of distribution of child pornography in violation of 18 U.S.C. sections 2252A(a)(2)(A) and (b)(1), because they relate to the "history and characteristics of the defendant" See 18 U.S.C. section 3553(a)(1). *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006).

In *United States v. Piggott*, No. 2:14CR124-MHT, 2015 WL 1894319 (M.D. Ala. Apr. 27, 2015), a case involving possession of child pornography, the court held, inter alia:

4

> The court varies because it finds Piggott less culpable because of his borderline intellectual functioning. While Piggott is fully competent under the law, he is *in many ways like a child* in his ability to grasp the consequences of his actions. Indeed, *he thinks like a child,* as he has an IQ is in the mid–70s and spells, reads, and does math between a 2nd and 4th grade level. He has taken special education since he was young. His education levels are in the bottom 1 % for people his age, and he has documented learning disabilities since a young age.
>
> His developmental disabilities also led him to have *the emotional development of a child.* He lives at home and is completely dependent upon his parents. He has no friends and his only reported romantic relationships are largely imaginary. He has no job. He is a recluse, spending the average day on the couch, smoking cigarettes, and watching television. The purpose of the inpatient treatment is to wean Piggott from dependence on his parents and force his interaction with the outside world.
>
> Although, again, the court finds Piggott fully competent under the law, this is not a heartland case. Piggott is simply not as culpable as someone with anywhere near average intellectual ability or emotional development. This court therefore joins several other courts that when presented with similar facts, granted a significant variance. *See United States v. Meillier,* 650 F.Supp.2d 887 (D.Minn.2009) (Schiltz, J.) (varying from a range of 57–to–71 months to 1 day custody because defendant, with a 70 IQ was, "intellectually speaking, an eleven-and-a-half-year-old boy" and "[n]o court would sentence an eleven-and-a-half-year-old boy to a lengthy term in federal penitentiary for downloading images of other children engaged in sexual activity"); *United States v. Rothwell,* 847 F.Supp.2d 1048, 1051–52, 1078 (E.D.Tenn.2012) (Collier, C.J.) (varying from a range of 41–to–51 months to 18–months custody in child pornography case where defendant had IQ of 77, always lived with his parents, read at a third-grade level, and had a limited degree of social awareness).

*United States v. Piggott*, No. 2:14CR124-MHT, 2015 WL 1894319, at *4 (M.D. Ala. Apr. 27, 2015).

The Court of Appeals for the First Circuit has held, in child pornography cases, that a defendant's mental health is a valid factor to consider when deciding whether a downward variance is appropriate. "Specifically, he maintains that the district court focused too much on an assault that he perpetrated on his parents, the nature of the offense, and the likelihood of recidivism and did not give enough weight to his acceptance of responsibility, mental health and

5

drug abuse issues, and the absence of any evidence suggesting that he ever was physically involved with young girls. …. In addition, the appellant overlooks the court's statement at the disposition hearing that it had considered all of the factors (both aggravating and mitigating). That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." *United States v. Clogston,* 662 F.3d 588, 593 (1st Cir. 2011). (See also *United States v. Hassan-Saleh-Mohamad,* 930 F.3d 1 (1st Cir. 2019)).

## AGE AND CRIMINAL HISTORY

In the case at bar, when we consider Defendant's age, criminal history, and mental health, a strong and clear argument can be made that a drastic downward variance is in order.

Defendant was only 18 when the offenses were committed (records will be cited below which demonstrate that while Defendant had been on the earth for 18 years, his mental state was that of a much younger person). And Defendant has no criminal history, no adult or juvenile record. Defendant has not even a moving/traffic violation. Lastly, he had no discipline problems while at school.

Later in this memorandum the issue of sentence disparity will be discussed, but for now, it can be said that counsel for the Defendant, after an extensive Westlaw and Lexis check, could find no case where a defendant of such an age and no criminal history, received a life sentence for a sexual offense with a minor. And while that does not mean one does not exist, if it does, it is rare.

Moreover, the Supreme Court of the United States has a long history of considering youthful age and a lack of any criminal history as mitigating factors. (see 18 U.S.C. section 3592(a)), and *Blystone v. Pennsylvania,* 494 U.S. 299 (1990)).

## MENTAL CAPACITY

The "NEUROPSYCHOLOGICAL / BEHAVIORAL CONSULTATION REPORT" of William E. Rinn, Ph.D. must be read in its entirety to get a full appreciation of the effects Defendant's disease had on his beliefs and actions. Defense counsel will for the next several pages highlight what he believes are the key points from that report but once again, each page of the report is highly insightful.

1) William E Rinn's Ph.D. diagnosis:

    a. "Using the diagnostic criteria of the American Psychiatric Association, there is compelling evidence for Asperger's syndrome in this defendant." (See page 4) and
    b. "He clearly and strongly met diagnostic criteria for just one such condition, Dependent Personality Disorder" (see page 6)

2) Asperger's Syndrome is explained in general terms:

    "Now considered to be one form of Autism Spectrum Disorder, Asperger's is a developmental disorder in which the individual *fails to develop* fundamental aspects of social functioning. It is known to have neural underpinnings, but the specific pathophysiology is not well understood. It is distinguished from other autistic disorders in that Asperger's patients have much less cognitive and intellectual dysfunction. Because of this, the impairments often go undetected in casual interaction. However, the social dysfunction of Asperger's syndrome is often severe and disabling. Only a minority of Asperger patients live and work independently in adulthood. (DSM 4)" (see page 4)

3) Rinn describes the effect Asperger's Syndrome has on Defendant's social -sexual development:

    "Asperger's is a developmental disorder, meaning that the signs and symptoms are present early in life and impact the child's development differently at different stages, including puberty. Like other developmental disorders, Autism Spectrum Disorder (Asperger's) has a pervasive impact on the individual's development, often leading to psychological and social and emotional maladjustment, including personality disorders and unconventional and sometimes problematic sexual adjustment. (see Fernandes et al., 2016; Henault 2013; Turner, et al 2017; Taylor, et al 2009).

7

Judgment is typically primitive and is characteristically compromised by their inability to understand social cues, social norms, and sanctions. Because of their social isolation, children and adolescents with, Asperger's syndrome may receive little or no guidance from family or peers regarding appropriate, inappropriate, harmful, or illegal sexual behavior. Because of the near absence of social interactions of any kind, family may assume that sexuality is simply not an issue. This can leave the individual abnormally susceptible to the influence of Internet sites that encourage or condone harmful sexual behavior. The Asperger's susceptibility to influence, and their predilection for computer and internet activities can leave them particularly vulnerable. This strongly appears to have been the case for this defendant.

This defendant's social-sexual development is decidedly stunted. At 18, sexual virginity is, of course, common and normal. But he also has no history of kissing, dancing with, dating, flirting, or even speaking with any potential romantic or sexual partners." (see page 4)

"For all things social, this defendant is functionally a child. However, it is extremely difficult to assign a "social age" to such patients. In some ways, this defendant presents as a typical five-year-old. In other ways, he presents as a 13-year-old. Additionally, there is wide variability in the normal population, such that we don't have good norms on what is normal/typical social development at age 5 or 13." (see page 10)

4) Rinn explains why Defendant was not diagnosed with disease until 18:

"It is noteworthy that Asperger's syndrome had not heretofore been diagnosed in this individual at any time in his childhood or early adolescence. This is, in fact, common. Asperger' children tend to be quiet, compliant, obedient, and they do not express severe distress. Their cognitive skills, although typically suboptimal, are not substantially impaired. Thus, these individuals escape the notice of teachers, counselors, law enforcement, and social agencies, unless and until such time as their impaired social skills get them into trouble. This often happens after the onset of puberty when they fail to adequately comprehend the psychosocial norms of sexual intimacy or to integrate those behavioral norms with their emerging sex drives. Diagnosis in adulthood occurs with sufficient frequency that it is given special consideration in the American Psychiatric Association's official diagnostic criteria". (see page 6)

5) Dependent Personality Disorder is explained:

"Individuals with this condition are highly dependent on other people and are fearful of making decisions or taking actions on their own initiative.

8

> This also comports with the reports from his sister that even trivial decisions are typically made for him by his mother or other family members. These *dependence* characteristics are particularly common in individuals with developmental disorders that compromise their judgment. It is particularly prominent in cases of Asperger's Syndrome, where childlike judgment is a cardinal feature."(see page 6) and a illustration of this: "This is exemplified in the defendant's statements to police early in his interrogation, when he realized that he was in trouble "sometimes you don't realize that -- *that* might be something wrong, but it is."(see page 5)

6) Rinn describes what effect Defendant's mental capacity had upon his offenses:

   a. "It is my professional opinion that, because of his Asperger's symptomatology, this defendant failed to appreciate the egregious wrongfulness of the behavior which he is charged." (see page 9)

   b. "It is my professional opinion that this defendant's Asperger's symptomatology was a central determinant of his behavior in the crime he is charged with. His Asperger's adjustment played a major determinative role at each step in eliciting this behavior. It is the underlying cause of his immaturity, his childlike judgement, his social incompetence, his socially primitive sexual adjustment, his unpreparedness for the challenges of puberty, his attraction to harmful internet sites, his vulnerability to suggestion, the restricted range of outlets for his sexual urges and his failure to comprehend the harmfulness of his offense. Although he appears to have understood that his behavior could get him in trouble if it was discovered, it is clear to this writer that this defendant failed to appreciate the degree of wrongfulness of the behavior in question, and that this failure was due entirely to a mental disease or defect. (Asperger's syndrome). That disorder rendered him socially and emotionally primitive and incapable of appreciating the acceptability of such behavior or the harm it causes. This problem was exacerbated by his experience of the act as being distinct from and separate from "real life". This distorted experience is also a consequence of his Asperger's syndrome".(see page 10)

The single page report of Walter Goula, MD, of ANCHOR Medical Associates is a brief synopsis of Defendant's mental capacity and a corroboration of the Rinn report. Of highlight in the report is the statement: "He is followed for severe Asperger's syndrome and depression…. He has chronic impairment of judgment and thought process as a result of his condition and he has limited to no understanding of the consequences of his actions, including with regard to the events involved in his recent legal issues."

9

Without belaboring the point any further, Defendant asserts that his mental capacity is a direct mitigating factor and should be strongly considered when determining whether a downward variance is forthcoming.

### B. To Afford Adequate Deterrence to Criminal Conduct and Treatment

This 3553(a) factor was indirectly addressed in the report of William Rinn. In a section entitled "Recidivism Prognosis" it states:

> The primary determinant of his alleged behavior in this case is his Asperger's syndrome. Asperger's is a chronic disorder and is unlikely to either progressively worsen or to diminish in the future. In most cases, however, it is possible to mitigate the social and emotional effects of the disorder, and even to alter the patient's attitudes and behaviors. Recent advances in treatment of Asperger's syndrome have focused on improving management of their signs and symptoms, improved social functioning, including group therapies, social skills training, and even professionally managed Asperger's friendship and dating networks.
>
> Prediction of criminal reoffending is always a perilous undertaking, especially in cases of sex crimes and especially in persons who are developmentally primitive. As a group, sexual offenders have a high recidivism rate. However, this defendant differs from the prototypical online sex offender in important ways.
>
> • The typical child sex offender is strongly sociopathic/psychopathic and has a significant history of other types of offenses as well as a juvenile history of conduct disorder or oppositional defiant disorder. This defendant has no history of even truancy, fighting, cheating, alcohol or substance use of any kind, or any form of disruptive behavior.
>
> • The typical offender would not be a sexual virgin, and most would have a history of sexual promiscuity and abusive behavior. This defendant has no history of even kissing, dancing, flirting, etc.
>
> • A typical offender would have normal social competence, often with strong manipulative skills. He would not be abnormally influenced by or dependent on the guidance of others in assessing the wrongfulness of a given behavior.
>
> Despite his resistance to the prospect of receiving treatment, unlike the typical offender, he is very likely to benefit from carefully planned psychological therapies (although possibly not from the group treatments he

10

would likely receive in incarcerated environment). He has characteristics that are often cited as indications of a good response to psychological therapy. These include normal intelligence, normal executive functioning, including normal problem-solving and ability to learn from experience. Because of his Asperger's-related dependent personality disorder, he will be strongly motivated to please authority figures, including a supportive therapist, and he will likely readily accept professional guidance. Assuming engagement in therapeutic counseling and treatment of his Asperger's psychological, social, and sexual adjustment, I am cautiously optimistic regarding this defendant's recidivism risk. This conclusion is based on an analysis of both positive and negative predictive variables which are further elaborated in Addendum 6 of this report. (see page 11)

Should the Court adopt the recommendation of the Defendant, he will be incarcerated for a minimum of 120 months. This means that he can receive 10 years of intensive treatment administered by the BOP. FMC Devens in Ayer Ma has an extensive Sex Offender Management Program. The Court could recommend that Defendant be sentenced to said facility.

Defendants asserts that 10 years of incarceration ▮▮▮▮ would be an adequate sentence to deter future criminal behavior by the Defendant.

### C. Unwarranted Sentencing Disparities

"Under *Booker,* when sentencing defendants, courts must refer to the list of factors contained in 18 U.S.C. § 3553(a), including (a)(6) which provides that courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *United States v. Morales-Chaires*, 430 F.3d 1124, 1128 (10th Cir. 2005); See also *United States v. Reyes-Santiago*, 804 F.3d 453, 481 (1st Cir. 2015) ("It instructs us to avoid 'unwarranted' disparities in sentences. *See id.* § 3553(a)(6). The court, in determining the particular sentence to be imposed, shall consider ... the need to avoid

11

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.")

As stated earlier in this memorandum, Defense counsel was unable to find during an extensive computer search, any case whereby a Defendant, without a criminal record and of a youthful age, was sentenced to life on a sexual offense involving minors; never mind one with a compromised mental capacity.

Counsel will cite a handful of First Circuit cases, whereby Defendants with similar charges to this case (some with prior criminal records) received sentences slightly above and below counsels' recommendation in this case. Obviously, the list is not even close to exhaustive, but Defendant believes it can provide a frame of reference.

In *United States v. Cates*, 897 F.3d 349 (1st Cir. 2018), Defendant Darrin Cates pleaded guilty to possession of child pornography, some of which depicted minors under twelve years of age. The Court imposed a 120-month prison sentence. In *Cates*, the court mulled over whether to apply a pattern of activity enhancement:

> "The court relied on a series of MSPCCU interviews limned in the PSI Report. One such interview was with a woman (whom we shall call Jane Doe). After hearing of the defendant's arrest, Doe called the police and reported that, in 1997, the defendant—then her mother's boyfriend—had sexually abused her when she was seven or eight years old. In an interview with the MSPCCU two days later (January 13, 2015), Doe related the details of two sexual encounters. During the first such encounter, the defendant allegedly forced Doe to sit next to him while he masturbated. During the second such encounter, the defendant allegedly forced Doe to perform oral sex on him.
>
> Doe went on to admit that she did not report the defendant's conduct to the authorities until 2001 (when she was twelve years old). At that time, she described three incidents in which the defendant allegedly forced her to touch and rub his penis with her hand and mouth.1 She said that she had performed these acts because the defendant had threatened to hit her (as he had done in the past). In an interview with the police the following day, the defendant denied Doe's allegations. No charges were brought." Id. at 352

12

Regarding his previous criminal record, Cates had been convicted of numerous crimes, though the bulk were several decades old. Between June 19, 1988 and November 5, 1989, when Cates was nineteen and twenty years old, he was convicted of a series of property offenses, including several burglaries which resulted in a one-year prison term. He also has several convictions for motor vehicle offenses, namely, operating after suspension. In 1998 he was convicted of assault and paid a $150 fine. He had a conviction stemming from a 2003 episode of disorderly conduct at the Waterville House of Pizza in Waterville, Maine. He had another disorderly conduct conviction arising from his 2008 use of offensive words and gestures at a McDonald's drive-thru window. He was fined $250 for this crime. Mr. Cates aged out of these convictions for purposes of Guideline calculation, and he was assessed a criminal history score of zero. He had a criminal history category of I.

In another case, "In 2005, a federal grand jury returned a two-count indictment charging Ortiz with possessing sexually explicit photographs of a minor, 18 U.S.C. § 2252(a)(4)(B), and exploiting a minor for the purpose of producing the photographs, 18 U.S.C. § 2251(a). The child pornography at issue here consists of sexually explicit photographs of a female referred to in the record as "SMN."[1] Ortiz and SMN were living together and were in a lawful, consensual relationship. At the time that the photographs were taken, SMN was fourteen years old and Ortiz was thirty-eight. The age of consent for sexual relations in Puerto Rico during the relevant period was fourteen.[2] When Ortiz and SMN went to a local Walgreens to develop rolls of film, employees alerted authorities to what they believed were sexually explicit photographs of a minor. A subsequent search of Ortiz's home revealed over fifty sexually explicit photographs of SMN. Upon Ortiz's arrest, he admitted that he had a sexual relationship with SMN and that he

13

was aware that she was fourteen. Prior to trial, Ortiz pled guilty to possessing sexually explicit photographs of a minor. He went to trial on the production count. *Ortiz-Graulau v. United States,* 756 F.3d 12, 14–15 (1st Cir. 2014). The defendant ultimately received a 180 month sentence.

In *United States v. King,* 741 F.3d 305 (1st Cir 2014), "In July of 2011, a federal grand jury sitting in the District of Maine returned an indictment charging the defendant with possessing a computer that held child pornography. See 18 U.S.C. § 2252A(a)(5)(B). The charge arose out of a forensic examination of the defendant's computer, which revealed surreptitiously recorded videos of the defendant's minor stepdaughter masturbating in her bathroom. The defendant initially maintained his innocence but, within a matter of months, entered a guilty plea." Defendant King was sentenced to a 72 month term imprisonment.

See also the cases of *United States v. Montalvo-Febus,* 930 F.3d 30 (1st Cir 2019)(84 months) and *United States v. Cameron,* 835 F.3d 46 (1st Cir. 2016) (165 months).

## CONCLUSION

A sentencing court is directed to impose a sentence which is "sufficient, but not greater than necessary, to comply with the purposes of sentencing." *Gall v. United States,* 552 U.S. 38 (2007). Defendant in this memorandum has chosen to focus on those factors (age, criminal history, mental capacity, likelihood of reoffending, treatment, and disparity) which he believes best determine whether that goal can be met.

Defendant asserts that for the reasons stated above, a term of imprisonment of 120 months ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will accomplish the purposes of sentencing.

On page 11 of the "Rinn Report" it states, "Because of his Asperger's symptomatology', the prison experience would be expected to be much more aversive and much more *deleterious* than would be the case for a normal individual." (emphasis added) Defendant by stating this is not suggesting that imprisonment is not in order. He is only suggesting that a severely long

14

prison term could actually have the opposite effect of what sentencing is trying to accomplish to wit: insuring that Akinola recognizes the wrongfulness of his behavior and does not reoffend, while at the same time meeting societies need to punish those who harm others. Ten years of incarceration ███████████████████████ does both.

                                      Respectfully Submitted,
                                      Akinola Akinlapa
                                      By his attorney,

                                      */s/ Joseph J. Voccola*
                                      Joseph J. Voccola #4132
                                      454 Broadway
                                      Providence, RI 02909
                                      Tel: 401-751-3900
                                      Fax: 401-751-8983

**Dated: October 4, 2022**

## CERTIFICATION

    I hereby certify that on the above date a true and accurate copy of the within was filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to: Milind Shah Esquire, United States Attorney's Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903.

                                                            */s/ Joseph J. Voccola*